ALICE JEAN HENDERSON v. GARY M. HENDERSON

No. 815DC495

(Filed 2 February 1982)

**1. Divorce and Alimony § 21.6; Husband and Wife § 13— consent judgment adopted by court—provision for no modification—enforcement by civil contempt**

A consent judgment in a domestic relations case which has been adopted by the court but which contains unequivocal language to the effect that its property settlement and alimony provisions are not subject to modification may still be enforced by civil contempt.

**2. Contempt of Court § 6.3; Divorce and Alimony § 21.5— contempt for failure to pay alimony—insufficient findings as to ability to pay**

The trial court's finding that defendant is an able-bodied man under no legal, mental or physical disabilities is insufficient to support the court's order that defendant be imprisoned for contempt until he pays an alimony arrearage since such finding is insufficient to support determinations that defendant had the ability during the period of default to comply with the court's alimony order and that he has the present ability to pay the arrearage either by making immediate payment or by taking reasonable measures to obtain that amount.

APPEAL by defendant from *Lambeth, Judge.* Order entered 15 December 1980 in District Court, NEW HANOVER County. Heard in the Court of Appeals 8 January 1982.

On 13 March 1980 plaintiff and defendant attempted to resolve their differences with respect to their marital separation by consenting to a judgment of the court. Based on findings of fact and conclusions of law included in the judgment, the court provided that:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

.    .    .    .

. . . That Defendant pay into the office of the Clerk of Superior Court of New Hanover County the sum of FIVE HUNDRED AND NO/100 ($500.00) DOLLARS per month as periodic alimony payments for the support and maintenance of Plaintiff commencing on March 22, 1980 . . ..

Plaintiff was awarded custody of the minor child, with defendant being given visitation rights as provided by the agreement. In addition, the judgment included the following provisions:

That this Judgment is an integrated agreement of the parties, that each provision contained herein is intended to be in consideration for each of the other provisions, and that none of the terms and provisions set forth herein shall be modified in the future unless both of the parties consent to such modifications except for the matter of the custody and support of the minor child born of the marriage of Plaintiff and Defendant which said matter of custody and support will remain open for review and modification by this court until the majority of said child.

On 17 July 1980, the defendant filed a motion in the cause, alleging *inter alia*:

That Plaintiff has failed and refused to abide by the terms of the Order of this court dated March 13, 1980 by denying Defendant his visitation privileges set forth therein and by attempting to poison the mind of said child against his father and his father's family and to totally destroy the affection of said child for his father and his father's family as well as by maintaining an environment which Plaintiff [*sic*] is informed

and believes and therefore alleges is detrimental to the mental health, and general well-being of said child.

Defendant asked that plaintiff be held in contempt for willful failure to abide by the terms of the judgment and further requested that he be awarded custody of the minor son.

In her answer, plaintiff admitted that the defendant had not visited their son as provided for in the judgment, offering as an excuse the child's unwillingness to do so and her unwillingness to force the child against his wishes.

On 18 September 1980, plaintiff filed a motion alleging that the defendant had ceased paying periodic alimony and requesting that he be adjudged in willful contempt for his failure to abide by the terms of the judgment.

After hearing evidence from the parties, the court found as a fact that:

(1) "Both parties have exhibited vindictiveness, hatred and disrespect for the other" in and out of the presence of the child and "have created an environment which is detrimental to the physical and mental health, welfare and general well-being of the minor child. Neither Plaintiff nor Defendant has encouraged the minor child to honor, respect or love the other parent."

(2) The plaintiff had admitted denying defendant visitation privileges at various times, including the child's birthday and one two-weeks' summer visitation.

(3) Defendant had ceased making periodic alimony payments in June 1980 in willful violation of the consent judgment.

(4) "The court in adopting this Judgment containing [the language that the judgment is unmodifiable in the future except for the matter of custody and support] did not intend nor did it waive any right of the court to enforce a willful violation of any term of this Judgment by civil contempt."

(5) "[E]ven if those portions of the March 13, 1980, Judgment dealing with the property settlement and alimony provisions amount to nothing more than a contract, then the violation by Plaintiff of the visitation provisions of this Judgment (though willful) was provoked by the conduct of the Defendant. This court

further finds that both parties have breached provisions of the Judgment and that each breach has been provoked by the conduct of the other party and that neither party has clean hands or is without fault. The court further finds as a fact that both Plaintiff and Defendant are entitled to specific performance of the Judgment."

The court concluded as a matter of law that it had "the power to enforce orders and judgments (even consent judgments) dealing with child custody, support and alimony for willful violations by the use of civil contempt"; "[t]hat the court has the power to enforce in equity specific performance of consent judgments"; and "[t]hat it is presently in the best interest and welfare of the minor child that the legal custody of the child be placed in the New Hanover County Department of Social Services, and that actual joint physical custody remain with the parents under strict supervision of the Department of Social Services under the terms and conditions for custody and visitation found in the Findings of Fact above." Plaintiff was ordered to purge her willful contempt by agreeing to comply fully with the visitation privileges. Defendant was ordered to be confined to the common jail of New Hanover County for failure to pay alimony until such a time as he paid $2,750 in arrearage.

Defendant contends that plaintiff's breach of the agreement by failing to allow him visitation privileges excused his performance under the agreement to pay periodic alimony and that the court had no authority to hold him in contempt or to order him to specifically perform a provision under the judgment.

*Bruce H. Jackson, Jr. for plaintiff appellee.*

*Goldberg & Anderson, by Frederick D. Anderson, for defendant appellant.*

MARTIN (Harry C.), Judge.

Once again this Court is asked to determine the effects of a consent judgment in a domestic relations setting. It is defendant's contention that because the agreement contemplates a full and final settlement, the terms of which are unmodifiable absent consent of the parties, a fortiori, the judgment is unenforceable by contempt. And, if contract law applies to the agreement, then by

its terms a breach by the plaintiff would excuse performance by the husband. *Wheeler v. Wheeler,* 299 N.C. 633, 263 S.E. 2d 763 (1980).

From our review of the law involving consent judgments in domestic settings, we first note that exceptions have all but engulfed the "general" rule that a husband and wife who have entered into a valid separation agreement are remitted to the rights and liabilities under the agreement or the terms of a consent judgment entered thereon. The agreement cannot be modified, ignored, or set aside by the court without the consent of the parties and is enforceable only as an ordinary contract. *Mitchell v. Mitchell,* 270 N.C. 253, 154 S.E. 2d 71 (1967); *Bunn v. Bunn,* 262 N.C. 67, 136 S.E. 2d 240 (1964); *Kiger v. Kiger,* 258 N.C. 126, 128 S.E. 2d 235 (1962); *Holden v. Holden,* 245 N.C. 1, 95 S.E. 2d 118 (1956); *Ellis v. Ellis,* 193 N.C. 216, 136 S.E. 350 (1927). Consent judgments under this category have been distinguished as receiving only the approval or sanction of the court. They serve no useful purpose and have been a source of litigation giving rise to unforeseen consequences in the form of numerous exceptions.

A consent judgment which constitutes nothing more than a contract between the parties made with the approval of the court is not final and binding as to those provisions involving custody or support of minor children. *Bunn, supra; Kiger, supra; Holden, supra.* A contract-type consent judgment may also be set aside or modified upon a showing of fraud, coercion, or mutual mistake in its procurement or execution. *McLeod v. McLeod,* 266 N.C. 144, 146 S.E. 2d 65 (1966); *Kiger, supra.* Moreover, there is authority that such a contract-type consent judgment may be enforceable by contempt proceedings for a willful violation of its terms. *McLeod, supra.* In addition, even if not initially enforceable by contempt, the same result is now obtainable through the vehicle of a decree for specific performance. *Moore v. Moore,* 297 N.C. 14, 252 S.E. 2d 735 (1979).

By far the most significant exception to the general rule that the court is without authority to modify or enforce a consent judgment is a finding that the court has adopted the agreement of the parties as its own determination of their respective rights and obligations. The judgment is thus superseded by the adoption of the parties' agreement as an order of the court. *White v.*

*White*, 296 N.C. 661, 252 S.E. 2d 698 (1979); *Bunn, supra; Britt v. Britt*, 36 N.C. App. 705, 245 S.E. 2d 381 (1978). Upon such a finding, the court has the authority to enforce its judgment through civil contempt proceedings. *Levitch v. Levitch*, 294 N.C. 437, 241 S.E. 2d 506 (1978); *Mitchell, supra; Bunn, supra; Elmore v. Elmore*, 4 N.C. App. 192, 166 S.E. 2d 506 (1969); *Dunn v. Dunn*, 1 N.C. App. 532, 162 S.E. 2d 73 (1968). In addition, a court-adopted judgment is subject to modification within certain limitations. The order must be one to pay alimony; that is, the payments must be denominated alimony or be alimony equivalents rather than, as the result of a property division, constituting reciprocal consideration for a property settlement. *White, supra*. Changed circumstances must be found to justify modification. *Bunn, supra; Britt, supra*.

Turning now to the facts of our case, we cannot agree with defendant that the no modification/final settlement provisions of the agreement is the determinative factor in reaching a conclusion that this is a contract-type consent judgment. It is not the intent of the parties, but the intent of the judge which controls. Such is the fate of those attorneys who persist in soliciting the "rubber-stamp" approval of the court on out-of-court settlement agreements. Rarely will the court's judgment not be prefaced by the words "It is Ordered, Adjudged and Decreed," evidencing the court's intent to adopt and order rather than merely "approve" the provisions of agreement. *White, supra; Britt, supra; Dunn, supra*. Moreover, when a court enters judgment on the facts found by it, it loses its character as a consent judgment. *McRary v. McRary*, 228 N.C. 714, 47 S.E. 2d 27 (1948). In the case sub judice, the court made extensive findings of fact. It is not for this Court to second guess the circumstances under which these findings were made, *i.e.*, that the attorneys drew up the entire agreement and submitted it only for Judge Lambeth's signature. It is apparent from the 15 December 1980 judgment that Judge Lambeth intended to adopt the findings as his own. Moreover, while recognizing that certain provisions relating to property settlement and alimony in the judgment may not be modifiable, "[t]he Court in adopting this Judgment containing this language did not intend nor did it waive any right of the court to enforce a willful violation of any term of this Judgment by civil contempt."

[1]  We are thus faced with the question of whether a judgment which has been adopted by the court, but which contains unequivocal language to the effect that it is not subject to modification, may yet be enforced by civil contempt. We answer in the affirmative. In so holding we reject the ipso facto argument that because provisions in a judgment may preclude modification, enforcement of those provisions is beyond the reach of the court. In 1957 one astute commentator wrote:

> North Carolina follows a consistent pattern in saying consent judgments can neither be modified nor enforced by contempt, whereas the majority rules refuse modification but allow contempt proceedings. It is submitted that as to contempt the majority is the better view; otherwise the judgment is of no practical value to the wife other than as a judicial affirmation of the contract existing between the parties. She would be as well off without the decree because she can enforce it only by the usual methods of enforcing contracts.

35 N.C.L. Rev. 408-09 (1957).

Matters involving custody and support of minor children remain within the court's jurisdiction. *Holden, supra.* As alimony provisions in a separation agreement are now enforceable through a decree of specific performance, *Moore, supra*, it seems appropriate to recognize a distinction between modification and enforcement of these judgments and to permit a court to do directly what it may do indirectly.

> The fact that a failure to comply with a decree for specific performance of the support provisions of a separation agreement might be punishable by contempt renders the separation agreement no less a contract of the parties. Similarly, the fact that a consent judgment incorporating an agreement of the husband to provide support may be enforceable by contempt proceedings renders it no less a contract.

*Haynes v. Haynes*, 45 N.C. App. 376, 383, 263 S.E. 2d 783, 787 (1980). Hence, once it is determined that a court has adopted the judgment, and the presumption favors adoption, the court may enforce its provisions upon a showing of willful failure to comply. This is so notwithstanding the fact that some or all of the provi-

sions relating to property settlement or alimony are not subject to modification, *i.e.*, are either contractual in nature or are otherwise reciprocal as discussed in *White, supra.*

In light of the foregoing, we find that the trial judge did not err in ordering each party to comply with the order of the court as contained in the 13 March 1980 judgment. In his 15 December 1980 judgment, Judge Lambeth was merely exercising his authority under the original judgment.

Defendant further raises several issues relating to the sufficiency of the evidence to support the trial court's findings of fact and conclusions of law. While we do not have the benefit of certain tapes offered at trial, we have read the testimony carefully and conclude that neither party is without fault. What surfaces from the record is an unceasing series of attacks and counterattacks, each designed to further the bitterness and animosity between the parties, to the detriment of the child. We hold that Judge Lambeth's efforts to resolve the dispute were positive and correct in every respect.

[2] Defendant finally contends that the evidence at trial was insufficient to support the court's finding that, during the period of default, he had the ability to comply with the alimony provisions as set forth in the 13 March 1980 judgment. Judge Lambeth based this finding on the fact that defendant was an "able-bodied man" under no legal, mental or physical disabilities; that on 13 March 1980 he had the ability to comply with the alimony provisions; and that there had been no change of circumstances. This finding falls short of the mark to support the court's ordering defendant imprisoned for contempt until he pays the arrearage. The question before the court was not a modification or reduction of alimony, which would necessitate a finding of changed circumstances. Under these facts it is necessary to find that defendant's failure to pay was willful; that is, the evidence must support a finding that, during the period of default, defendant had the ability to comply with the order. *Mauney v. Mauney*, 268 N.C. 254, 150 S.E. 2d 391 (1966); *Teachey v. Teachey*, 46 N.C. App. 332, 264 S.E. 2d 786 (1980). In order to support a sentence of confinement in jail for contempt, it is further necessary to find that defendant has the present ability to pay the arrearage, either by making immediate payment or by taking reasonable measures to obtain that

amount. *Mauney, supra; Frank v. Glanville,* 45 N.C. App. 313, 262 S.E. 2d 677 (1980). On the record before us, there is insufficient evidence of defendant's ability to comply with the order during the period of default, or with the order to pay the arrearage, and there were no findings detailing his ability to pay.

We therefore vacate that portion of the judgment dealing with the court's finding defendant in contempt and ordering his confinement until he pays the arrearage. Upon remand, further proceedings may be held with respect to the willfulness of defendant's failure to pay. The judgment is affirmed in all other respects.

Modified and affirmed.

Judges ARNOLD and WELLS concur.